Haynes, J.
This oase has oocupied our attention a considerable time; the record was so very long, it necessarily took a great deal of time to examine the case and discuss the various ques* *69 tions which were raised in it. It is impossible now, at this late hour, to go into a detailed statement of the case, and perhaps it would not be profitable. The questions, after all, when you get down to the ultimate questions, are not very numerous. The plaintiff was the conductor of a freight train on the Clover Leaf Road, which was proceeding west on a certain day in July — which was a way freight train as I understand; but, at any rate, he was called upon to do work at- each station in receiving and delivering cars, and he had proceeded on his way until he arrived at the town of Kokomo in the state of Indiana, where he had work to do. In performing his work he had taken oars off of the main track and put them on a side track, to go into the train, and in performing the work he was necessarily detained there for a couple of hours, and at about nine o’clock he was still engaged in bis work, and in the prosecution of his work attempted to cross the track in front of some cars which were standing upon the main track, for the purpose of throwing a switch,when he was suddenly run over by bis own train and two oars passed over him, and while he was under the third, oar he was oaught in some manner and thrown over so that his foot and ankle came under the weels of the oar ana he was injured so that it became necessary to amputate his leg. He was a young man, and it was claimed that he was earning a good salary. He was thus injured by a train that was following his, running into the cars he had thus placed on the main track. He had notice that this train was following his, and from time to time through the train despatcher knew that it would pass his train at this point. The train that he had was a long train, consisting of sixty-one cars, and the town of Kokomo seems to extend over quite a hit of territory, and at the eastern extremity of the town there is a very long switch, called by the railroad men a passing switch, and plaintiff bad placed on that switch a large proportion of his cara, and had sent out one of his brakemen to place upon the track, at the proper distances, torpedoes — wbioh the brakeman did. The brakeman then was ordered to return, and did come back to the train and remained in the cabooae attached to that portion of the train standing on the side track, and placed on the rear of the caboose the proper red light, which denoted danger anddenoted that there was a train on the side track whiofi possibly might not clear the main track. Testimony was offered to show that it was oustomary that when the approaching train arrived at that point and saw these cars upon the side track with the red light displayed, to stop before pro *70 oeeding,and it is very earnestly contended that that evidence whioh was received of that custom or practice was improperly received — that the rules of the oompany should govern the action of the train, and that the evidence should not have been reoeived. We are of the opinion that the testimony was rightfully reoeived; for one question that was being raised was, whether that freight train which was coming —this extra' — was using due and proper oare.
Another question is as to the contributory negligence of the plaintiff in this case. This raises the question as to what he had a right to rely upon in regard to the aotion of this following train. The persons in oharge of the approaching train were bound to use ordinary care in approaching trains, and in coming into the vicinity of this train were bound to observe the torpedoes. They heard the torpedoes, they admit that; they saw the train, they admit that; and now the question as to what was the ordinary custom — the customary practice of'a train in that condition, or the passiug of a train of that kind, it seems to us was a very proper question to be made before the jury. It is what the trainmen do under those circumstances in the ordinary oourse of their business the ordinary management of their trains, in the exercise of prudence m passing a point of that kind'; and the custom may throw a great light upon the question as to the negligence of the approaching train, and more especially it throws light upon the question as to what the plaintiff had a right to rely upon in regard to that approaohing train. Now, that train passed this point without stopping, and came on down to a place where the Nickel-Plate crossed the railway. The train' had to stop there for the opening of a gate. The train from there proceeded to the station. The semaphore at the station showed a red light, whioh showed that under the rules of the oompany the train should stop there and receive orders. The train slackened down. The conductor was upon the locomotive, and he jumped off, ran to the operator, received his orders and got onto his train, and gave the “High Ball” signal, as they call it, to go ahead and get out of town, and the engineer proceeded to get out of town, ran about 2,200 feet until he came to the cars of plaifitiff’s train and ran into them. At the time the conductor reoeived this notice from the operator, he made inquiry in regard to plaintiff’s train— this local train, as they call it — 'and was told that the conductor of this train was down ahead of him at work and to look out for him. So that the conductor of the following train at the time he signaled his train to go ahead, had *71 ample notice of the whereabouts of the plaintiff’s train, and was warned to protect him, and that was in full time to en-table him to do so; but he failed to do so, but sent the train ahead. It is not contended but that the officers of the approaching train were negligent; it appears to us that they were very clearly and grossly negligent in the performance of their duties.
Now the question comes back — which is the main question in the case — -as to whether the plaintiff himself was guilty of negligence? There is a rule of the company — Rule '97a — whioh requires that when another train is there under those circumstances — -either an extra train or other freight ■train — that the conductor shall use his judgment in protecting his train. It is claimed that the plaintiff should have done something, to protect his train and his oars standing there as he brought them out on the main track — that he was not protecting his train at all; that he exercised no discretion in regard to the matter. Now these cars whioh were standing upon the main track were, many of them — and perhaps all of them — oars that he had taken out from the side track and was putting on the main track for the purpose of making up and going on with his own train. Other ■cars on the track were cars that he had placed to be taken off from the main- track, and it was proper for- him to use the main track and have his oars standing on the.main track for a portion of the time. I suppose that this custom and manner of doing the work should have been known, and was 'known to the men upon the approaching train; that is to Bay, that in order to make up his train he had to place his ■cars on the main track. And the question is, as to whether he had a right to rely upon the rules of the company as to matters which would be brought to the notioe of the approaching train — to rely upon those for his protection? 'Whether he had a right to suppose that this train whioh was approaching — that it would observe the signals whioh had been left for it, the torpedoes and signals and the train 'itself and the signals of the semaphore — and I should say in passing, that the plaintiff had stopped, himself, at the same point, at the same semaphore, and had a conversation with the operator and told him what he was to do, so that •the operator knew where he was and what he was doing and •how he and his train were occupied — and'the question is ■whether he had a right to rely upon the notice whioh would (be given to the persons in charge of the other train, and a *72 right to assume, for his protection, that they would, as they should, come to a stop and not intersiere with him in his business. The jury have found that he was exercising due and ordinary care. The eourt charged the jury that the rule of ordinary care was the obligation that was upon him under the rules of the company,and we are unable to see ourselves why he was not in the exercise of ordinary care. We are strongly inclined to the opinion that he was; that he was doing what an ordinarily prudent man might well do, going forward in the conduot of his work, knowing that the-operator knew where' he was and what he was doing, and he knew that any railroad man approaching him on another train would know from the signals which were to he observed, that there was a “live” train on the track, 'and that he must look out for it, and in doing this we think he was doing all that he was required to do.
It is said that there was a certain rule which required him to send a man back and keep him back there, to inform him of the incoming trains. Authorities are oited — > decisions of courts of high authority — to show that a rule of that kind is applicable only in the country, and not in the yard, at a station. We think that distinction is well taken,, and the rule did not apply in this case. But it is claimed that the brakeman who was sent back where the oars were upon the side traok, at the east end of the town, was guilty of negligence in not staying out until the eoming train passed. We think that that brakeman was not in default in coming in. He was notified to came in, and while a wrong signal was given' — still he got it — and knew there was no other signal except that for him, and he came in and placed himself in the car where he belonged, and we think his ooming in in no way contributed to the accident.
This is a very brief statement of the case, and, without going into any very lengthy discussion of the points, we are of the opinion that the judgment of the court of common pleas should be affirmed.
It is said here that we ought to affirm this judgment because the court of common pleas out down the verdict. The verdict was $15,00p,and the court of common pleas required that there should be an abatement of something like $7,000. While there was some discussion upon that subject, v^e find upon the record that the oouyfc of common pleas found that the verdict was excessive, without finding at all whether it was returned under the influence of passion or prejudice, oar anything of that kind, but found that i't was exóessive, and that the plaintiff should remit a certain sunn.
Hurd, Brumback & Thatcher, for Plaintiff in Error.
Brown & Geddes, for Defendant in Error.
Without discussion of some of the questions which were raised here, it is sufficient to say that the case cited from 22 ■Ohio St., p. 446, covers precisely this case, and we think the -court was acting within the authority recognized by the Supreme Court, and that we should, under that deoision,affirm the action of the court of common pleas.
Reasonable cause will be certified for filing petition in error.